IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.     Criminal No. 3:24-cr-34

RICHARD SCOTT TYSON
    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on Richard Scott Tyson's MOTION FOR LEAVE TO FILE FOR RECONSIDERATION (ECF No. 198) and Tyson's ADDENDUM TO COUNSEL'S SUBMITTED MOTION TO RECONSIDER (ECF No. 199).[1] For the reasons set forth below, the Motion for Leave to File for Reconsideration was DENIED pursuant to the Court's ORDER entered October 16, 2025 (ECF No. 226).

### I. BACKGROUND

The relevant procedural and factual history are set forth in detail in the Court's Memorandum Opinion (ECF No. 157) addressing the MOTION TO RECONSIDER THE COURT'S RULING ON INDEPENDENT SOURCE (ECF No. 136) and, therefore, will not be repeated here.

### II. LEGAL STANDARD

"[D]espite the nonexistence of a specific rule in the Federal Rules of Criminal Procedure, a district court has the inherent

---

[1] On October 7, 2025, Lawrence H. Woodward filed his MOTION TO ADOPT DEFENDANT'S PRO-SE FILING, ECF # 199 (the "Motion to Adopt") (ECF No. 219). The Court, by Order (ECF No. 226), granted the Motion to Adopt. Therefore, for the purposes of deciding Tyson's Motion for Leave to File for Reconsideration, the Court has taken full account of all arguments and points raised by Tyson in his pro-se addendum.

power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders." United States v. Breit, 754 F.2d 526, 530 (4th Cir. 1985). Because the Federal Rules of Criminal Procedure lack guidance respecting motions for reconsideration, courts have "look[ed] to the rules governing civil cases as a substantive guidepost." United States v. Benjamin, No. CR 3:21-525-MGL-1, 2023 WL 3325268, at *2 (D.S.C. May 9, 2023). The Fourth Circuit has set forth three avenues through which courts may re-consider interlocutory rulings under Federal Rule of Civil Procedure 54(b), which provides the framework for motions to alter interlocutory orders in civil matters. The three avenues are: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." U.S. Tobacco Coop. Inc., v. Big South Wholesale of Virginia, LLC, 899 F.3d 236, 257 (4th Cir. 2018) (internal quotation marks omitted); Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017); Benjamin, 2023 WL 3325268, at *2 (applying this standard to a motion for reconsideration made in a criminal case).

### III. ANALYSIS

For the following reasons, the Court finds that Tyson does not satisfy any of the standards for obtaining relief in his Motion for Leave to File for Reconsideration.

The first avenue that opens the door for reconsideration is

whether further litigation has yielded "substantially different evidence" from the evidence that was available to the litigants at the time of the original decision. Carlson, 856 F.3d at 325. No new evidence has been adduced in this case since the Court made its ruling on the independent source doctrine in the Memorandum Opinion on January 13, 2025. This avenue is, thus, foreclosed.

Tyson, in his pro-se addendum, argues under this first avenue that "[t]here is evidence, already established, that [Minor Victim 1 ("MV1")] initially denied any wrong-doing by Mr. Tyson in his first interview on September 6, 2024. It was only after illegally seized evidence, pictures of MV1 in the nude, was used to coerce him, did MV1 tell investigators that Mr. Tyson had taken nude pictures of him." ECF No. 199 at 3 (internal citation omitted). Tyson claims that, similarly, Minor Victim 2 ("MV2") initially revealed nothing incriminating about Tyson until MV2 was confronted with a picture of himself performing oral sex, which came from Tyson's phone. ECF No. 199 at 4. For support, Tyson cites the COMPLETE TRANSCRIPT OF MOTIONS BEFORE THE HONORABLE ROBERT E. PAYNE (ECF No. 62) ("June 17 Tr.") and the Government's EMERGENCY MOTION TO REVOKE DEFENDANT'S COMMUNICATION PRIVILEGES (the "Emergency Motion") (ECF No. 26).

Those citations fail to support any of Tyson's claims. As to MV1, the June 17 Transcript does not establish, as Tyson claims, that MV1 initially denied any wrongdoing and then, only after

illegally seized evidence was used to coerce MV1, revealed to investigators that Tyson had taken nude pictures of him. June 17 Tr. at 113:1-129:8. There is no mention in the June 17 Transcript of Detective Joyner having shown MV1 any such evidence or MV1 changing his story in response. As for the citation to the Government's Emergency Motion, Tyson appears to be referring to the following block quote referring to a jail call made by Tyson to MV1:

> **Defendant** - I heard something funny from my silly lawyer because she got all the interviews and stuff this is what I was going to tell you. Um, I didn't know that you had denied everything at first and then when they came back with evidence of something, they said they had evidence of something that's when you said I was going to kill myself or something - do you remember that?
>
> **MINOR VICTIM 1**- Yeah, that's what you said you were going to do - so I said yeah, he said something about killing himself.
>
> **Defendant** - No, that is if I was going to have to go to jail forever. That was not every time, I like bribed you or something. I don't even know what the hell they are talking about. But it was kind of funny. Anyway, I'm going to shut up now because they are going to probably use this against me too but at this point the only issue is the evidence and that they can't use it… But yeah it was funny to see what you did, I mean, I kind of figured but I didn't know, you know what I mean? I never saw it. And I was kind of like wow - you are a sweetheart but I'm sorry you got involved in anything - you know what I mean, it's so fucking stupid. This is all because of your damn girlfriend … all she had to do was tell you and I would have gone and registered it and then they would have never messed with me…. In the meantime, I won't get to see you for God knows how long, this has been a disaster area.

ECF No. 26 at 6. However, Tyson's own personal "perceptions" of

events with regard to MV1 are in no way binding on the Court.

As to MV2, the June 17 Transcript makes clear that only near the <u>end</u> of the interview of MV2 was he shown the picture recovered from Tyson's phone of MV2 performing oral sex. <u>Id.</u> at 128:11-129:8. This completely conflicts with Tyson's timeline and characterization of the events. The fact that the photo was shown to MV2 near the <u>end</u> of the interview directly contradicts any unfounded claims of coercion raised by Tyson.

In any event, this argument fails on its own terms because Tyson admits that this "evidence" was already established. ECF No. 199 at 3. Therefore, further litigation yielded no "substantially different evidence" from what evidence was available to the litigants at the time of the original decision. <u>Carlson</u>, 856 F.3d at 325.

The next avenue is whether there has been a change in applicable law. <u>Id.</u> at 325. Tyson cites only one case that was decided since the Memorandum Opinion was entered on January 13, 2025, namely, <u>United States v. Blasdel</u>, 153 F.4th 1069, 1071 (10th Cir. 2025). Tyson asserts that the court in <u>Blasdel</u> "ruled that when an initial search is found to be over broad, the government cannot then use the illegal seized evidence in a federal trial." ECF No. 198-2 at 6. As a preliminary matter, it is important to note that this out-of-circuit case carries no precedential value in the Fourth Circuit and, in turn, there has been no change in

the law applicable in this Court. However, even if <u>Blasdel</u> is considered, the result in this case would be unaffected. The facts of <u>Blasdel</u> are as follows:

> Defendant Zachary Jacob Blasdel appeals his conviction and sentence in this Fourth Amendment case. Police officers entered Mr. Blasdel's storage unit and conducted a warrantless search. They later used what they discovered in an affidavit in support of their successful request for a search warrant. When the officers executed the warrant, they found drugs and firearms. Based on the results of the storage unit search, officers obtained a search warrant for Mr. Blasdel's house, where they found additional drugs and firearms. Mr. Blasdel filed a motion to suppress the evidence from both searches on Fourth Amendment grounds. The district court denied the motion. . . . [Blasdel] argues that once the constitutionally invalid portions of the affidavit in support of the storage unit search warrant are excised, the affidavit fails to establish probable cause for the warrant to be issued. As a result, Mr. Blasdel argues, the subsequent warrant to search his home was based on fruit of the poisonous tree.

<u>Blasdel</u>, 153 F.4th at 1071-72. While the Tenth Circuit reversed the district court's dismissal of Blasdel's motion to suppress evidence, it relied on the fact that, after the unconstitutionally obtained information was excised, the affidavit in support of the storage unit search no longer supplied sufficient probable cause. <u>Id.</u> at 1074, 1077. Tyson's case is factually distinct. The Court has already concluded that "[t]he federal search warrant was fully and properly supported by independent sources of probable cause." ECF No. 112 at 52. Therefore, the holding in <u>Blasdel</u> is simply inapplicable to Tyson's case.

The final avenue for reconsideration is whether the Court has made a "clear error causing manifest injustice." Carlson, 856 F.3d at 325. At the outset, it is important to note that in the Fourth Circuit, "a prior decision does not qualify for the third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." U.S. Tobacco Coop. Inc., 899 F.3d at 258 (citing TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (cleaned up). None of Tyson's arguments pursuant to this third avenue even approach satisfying this strict standard for obtaining relief on his Motion for Leave to File for Reconsideration.

Primarily, Tyson argues that "the Court construe[d] the Independent Source Rule too narrowly and erroneously concluded that Independent Source Rule was an applicable exception to allow the admissibility of the fruits of the federal search warrant." ECF No. 198-2 at 3. Tyson argues that the Court should focus more on the motives at play, "i.e. the county turned the case over to the federal authorities specifically because the warrant and search was flawed." ECF No. 198-2 at 2. The relevance of this, according to Tyson, is that "[t]he deterrent effect would be rendered meaningless if the law allowed the state authorities a free shot and if they miss the mark then simply turning the case over to the federal authorities to carefully craft an affidavit as a way to avoid the dictates of the 4th Amendment." ECF No. 198-2

at 3. In other words, Tyson claims that there can be no Independent Source where the "entire reason the federal government was contacted was because the county had illegally searched the phone and found child pornography." ECF No. 198-2 at 4.

Tyson, while failing to cite any binding authority in support of his position, essentially calls upon the Court to divine new Independent Source doctrine. The Court will not take up that task here. It is sufficient to say that neither this situation nor the Court's prior holding, even if erroneous, meets the test set forth in U.S. Tobacco Coop. Inc., 899 F.3d at 258 (citing TFWS, Inc., 572 F.3d at 194).

Tyson also claims that the Court must consider the following: (1) deterrence and (2) whether the illegally seized evidence directed the investigation to a completely different application. ECF No. 198-2 at 4-5. The Court does not see, and Tyson does not demonstrate by way of any citations, how these considerations would impact the Court's Independent Source analysis or prior holding. The Court set out the Independent Source doctrine, applied it faithfully, and is satisfied that it evaluated the considerations laid out above, as necessary, in making the final determination.

Tyson also argues that, under the Independent Source doctrine, "the government cannot have included in their application for a (subsequent) warrant, any recitation of their earlier unlawful observations." ECF No. 198-2 at 5 (citing United

States v. Bullard, 645 F.3d 237, 244 (4th Cir 2011)). That contention ignores the fact that the Court already has concluded that "[t]he federal search warrant was fully and properly supported by independent sources of probable cause." ECF No. 112 at 52. "None of the allegedly tainted evidence was presented to Magistrate Judge Speight, so it could not have formed any basis on her finding probable cause when issuing the federal warrant." ECF No. 112 at 56. In turn, this argument similarly fails to satisfy Tyson's burden on his Motion for Leave to File for Reconsideration.

Finally, Tyson once again begins to discuss the Inevitable Discovery approach. However, considering that the previous opinion found that the Independent Source doctrine was applicable based on the facts of this case, the Court finds it entirely unnecessary to address any of Tyson's arguments on the Inevitable Discovery approach.

In sum, as to this third avenue, Tyson failed to satisfy his burden of demonstrating a clear error causing a manifest injustice.

## IV. CONCLUSION

For the reasons provided above, the Motion for Leave to File for Reconsideration was DENIED pursuant to the Court's ORDER on October 16, 2025 (ECF No. 226).

/s/  REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 5, 2026